1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DALE HARVEY,<br><br>    Petitioner,<br><br>  v.<br><br>GARANN ROSE MEANS,<br><br>    Respondent. | CASE NO. 2:23-cv-1712<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S SECOND MOTION FOR TEMPORARY RESTRAINING ORDER** |

## 1.  INTRODUCTION

This matter comes before the Court on Petitioner Dale Harvey's second motion for a temporary restraining order (TRO) against Respondent Garann Rose Means. Dkt. No. 14. On November 8, 2023, Harvey filed a petition initiating this matter under the Hague Convention on the Civil Aspects of International Child Abduction ("Convention") and the International Child Abduction Remedies Act (ICARA). Dkt. No. 1. The Court ordered Harvey to provide Means with notice of his petition and TRO motion and ordered the parties to appear for an in-person hearing on November 20, 2023. Dkt. No. 15. On the date of the hearing, only Harvey and his

ORDER - 1

counsel appeared. Based on the uncontested record, the Court GRANTS in part and DENIES in part the requested relief.

## 2. BACKGROUND

The facts below are taken from Harvey's verified petition and sworn declarations and exhibits supporting his motion. Harvey is a citizen of Scotland, and Means is a United States citizen. Dkt. No. 4-1 at 2-3. Means and Harvey have two children: ZUHM and EKHM, who are five- and four-years old. Dkt. Nos. 1 at 1; 4-5 at 2-3. Both children were born in Glasgow, Scotland and have resided there since birth. Dkt. Nos. 4 at 1; 4-5 at 2-3. Means filed for divorce on April 28, 2023, but custody proceedings have been ongoing since February 11, 2020. Dkt. No. 2 at 7, 17.

As a part of these proceedings, Means asked the Scottish court to allow her to relocate to Seattle with her children, but the Scottish court denied her request and ordered split custody. Dkt. Nos. 2-4 at 7; 4-10 at 2.

Despite the Scottish court's order, Means left Scotland with the couple's children sometime between September 29 and October 4, 2023. Means admitted taking the children to Seattle in an email to Harvey on October 4, 2023. *See* Dkt. No. 2-18 at 2.

Harvey moved for an ex parte TRO restraining Means from leaving the District with the children and ordering the U.S. Marshals to return the children to him. Dkt. No. 6. But the Court denied his motion for failing to comply with Fed. R. Civ. P. 65(b)(1). Dkt. No. 11 at 2. Even when a TRO motion is otherwise meritorious, district courts may deny the request simply on the ground that adequate efforts were not made to notify the opposing side, or that there is no

justifiable reason for issuing the TRO without notice. *See Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131-1132 (9th Cir. 2006).

On November 17, 2023, Harvey again moved for a TRO. Dkt. No. 14. Harvey's counsel, Marguerite Smith, emailed a copy of Harvey's motion and supporting exhibits to Means at her email address: garann@gmail.com. Dkt. No. 16 at 1-2. The Court ordered Harvey and Means to appear in-person for oral argument on the TRO. Dkt. No. 15. Harvey's counsel certified that she emailed a copy of the Court's order to appear to Means at the same email address. Dkt. No. 16 at 1-2.

## 3.  DISCUSSION

### 3.1  Legal standard.

The standard applicable to preliminary injunctions also governs TROs. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (explaining that the court's "analysis is substantially identical for the [preliminary] injunction and the TRO[.]"); *see also Fang v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 16-cv-06071, 2016 WL 9275454, at *1 (N.D. Cal. Nov. 10, 2016), *aff'd*, 694 F. App'x 561 (9th Cir. 2017) ("[If] notice of a motion for a temporary restraining order is given to the adverse party, the same legal standard as a motion for a preliminary injunction applies."). To obtain a TRO, Harvey must show that he is "(1) likely to succeed on the merits, (2) likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest." *Garcia v. Duarte Reynosa*, No. C19-01928-RAJ, 2020 WL 363404, at *1 (W.D. Wash. Jan. 22, 2020) (citing *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009)).

A party need not receive formal service of process before a TRO may issue. *See H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 842 (7th Cir. 2012). Rather, actual notice will suffice even if a party fails to meet the requirements for an ex parte TRO set forth in Fed. R. Civ. P. 65(b)(1).

### 3.2   The Court finds Harvey provided sufficient notice of TRO motion to Means.

On November 17, 2023, Smith emailed a copy of the Court's minute order ordering Means to appear at a hearing as well as a copy of Harvey's second motion for a TRO to Means at garann@gmail.com. Dkt. Nos. 16 at 1; 16-1 at 2. The Court finds the email address garann@gmail.com is likely to provide actual notice to Means. Harvey testified that Means uses that address to community with him "all the time." Dkt. No. 14-2 at 2. Harvey also confirmed to the Court during the hearing that Means has used the email address professionally and has used it regularly for 20 years. As recently as October 4, 2023 and October 21, 2023, Means sent Harvey emails about their children using this email address. Dkt. Nos. 2-18 at 2; 4-2 at 2.

Harvey has also made efforts to serve Means at her suspected physical address in Seattle. A contact at the U.S. Department of State confirmed Means's name is associated with her mother's Seattle address: 8844 18th Avenue SW, Seattle, WA. Dkt. No. 4-15 at 2. Harvey has visited this residence four times but has not seen Means or the children there. Dkt. No. 14-2 at 1. Smith also hired a process server, Michael Graham, to personally serve Means at the address. Dkt. No. 12 at 4. Graham attempted service at 8844 18th Ave SW, Seattle, WA twice, once on November 13 and again on November 14, 2023. Dkt. No. 12-6 at 4. The gates were

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

padlocked, and Graham could not make contact. He also contacted a "skip trace" but found "no more useful information." *Id.*

Based on this record, the Court finds Harvey made diligent efforts to notify Means of the TRO and she received actual notice of the TRO motion via email.

**3.3    Harvey will likely succeed on the merits.**

Harvey is likely to establish that he's entitled to relief under the Convention based on the uncontested records in evidence. For children under the age of sixteen, the Convention aims "a) to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and b) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Convention, art. 1; *see also Mozes v. Mozes*, 239 F.3d 1067, 1076 n.23 (9th Cir. 2001), *abrogated on other grounds by Monasky v. Taglieri*, 140 S. Ct. 719 (2020) ("If a child has attained the age of sixteen, the Convention no longer applies[.]").

A child is "wrongfully removed" where removal occurs "in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention" and "at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention." Convention, art. 3. "A court applying this provision must therefore answer four questions: (1) When did the removal or retention at issue take place? (2) Immediately prior to the removal or

retention, in which state was the child habitually resident? (3) Did the removal or retention breach the rights of custody attributed to the petitioner under the law of the habitual residence? (4) Was the petitioner exercising those rights at the time of the removal or retention?" *Mozes*, 239 F.3d at 1070.

Here, both children are under 16-years old. The Scottish court awarded split custody and barred Means from leaving the country with the children except for vacations. Scotland appears to be the children's habitual residence. And Harvey appears to have continuously exercised his custody rights prior to removal. Finally, Harvey's petition for relief under the Convention is timely.

### 3.4    Absent a TRO, Harvey is likely to experience irreparable harm.

Congress recognized that wrongful removal and retention of a child causes continuing harm to the parent and child that justifies the preliminary relief sought. *See* 22 U.S.C. § 9004(a) (Courts may "take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition."). The factual circumstances suggest Means wrongfully removed and continues to retain the children in the United States in violation of her custody arrangement. On this record, the Court finds that irreparable harm exists and will grow if Means attempts to leave the jurisdiction before this matter is resolved.

Harvey has not shown, however, that the children should be physically returned to his custody at his time. While Harvey has produced records purporting to show Means's "mental health difficulties," he has failed to demonstrate that she

is an immediate and present risk to the physical or emotional safety of her children. *See Muwakil-Zakuri v. Zakuri*, No. 17-CV-2062 (JCH), 2017 WL 6453399, at *2 (D. Conn. Dec. 11, 2017). The Court finds the trauma that will result from removing the children from her custody at this time outweighs the need for immediate removal, and that the issue of custody should be addressed at the merits stage of the case. This is especially true given Means's earlier allegations about Harvey's abuse. *See Garcia, No.* C19-01928-RAJ, 2020 WL 363404, at *2.

### 3.5    Harvey's request to seal Dkt. Nos. 12-2, 12-5, 13-1, 16-1, and 16-2 is denied.

At the hearing, Harvey requested through counsel that the Court seal the exhibits filed as Dkt. Nos. 12-2, 12-5, 13-1, 16-1, and 16-2. The Court placed those exhibits under provisional seal, and now rules on the merits of Harvey's request. Dkt. Nos. 12-2, 12-5, 13-1, 16-1, and 16-2 are copies of emails Harvey's attorney sent to Means with a dropbox link to download documents in the record. Smith informed the Court that if a third-party uses this link they can access the documents including some that are confidential in nature.

"There is a strong presumption of public access to the court's files." LCR 5(g). As a result, a party seeking to seal a judicial record bears the burden of overcoming this strong presumption with compelling reasons. *Kamakana v. City & Cnty. of Honolulu,* 447 F.3d 1172, 1178 (9th Cir. 2006). Other than the download link, the exhibits in question do not contain confidential material that would justify keeping them under seal. The Court finds the public's right of access and Harvey's concerns are best balanced by redacting the download link while keeping the remaining

portion of the document publicly available. Therefore, the Court will keep the documents already filed under seal but ORDERS Smith to refile the exhibits in a redacted form.

## 4.  CONCLUSION

Accordingly, the Court GRANTS in part and DENIES in part Harvey's TRO motion as follows:

4.1.  Means cannot remove the children, or directly or indirectly allow the children to be removed, from the Western District of Washington unless ordered by this Court. Third parties, including Means' parents, are likewise prohibited from removing the children from the Western District of Washington. The restriction will automatically expire at midnight on November 20, 2023, unless specifically extended by further order of the Court.

4.2.  Means must deliver all passports, visas, or other travel documents held in her name and in the name of the children (both Scottish and American travel documents) to the Clerk of the Court within 72 hours of receiving notice of this Order.

4.3.  Means must post a bond of no less than $25,000 within 72 hours of receiving notice of this Order. Means must provide Harvey proof of the bond for $25,000 within 72 hours of the bond being posted. The proceeds of the bond may be forfeited to Harvey if the Court determines Means has violated the requirements of this Order. If forfeited, the proceeds of the

bond will be used to help Harvey remedy the violation, including paying his reasonable attorneys' fees and costs.

4.4. The Court will hold a hearing on the issuance of a preliminary injunction and other case management issues on November 30, 2023, at 10:00 a.m. Harvey and Means must appear in-person in Courtroom 16A at the United States District Court for the Western District of Washington, 700 Stewart Street, Seattle, WA 98101.

4.5. The Court DENIES Harvey's request for the Marshals to take custody and retain custody of the children at this time.

4.6. The Court orders Harvey to serve Means with the petition, a summons, and a copy of this order in accordance with the Federal Rules of Civil Procedure. Harvey must file proof of service with the Court or show cause in writing by November 28, 2023, why he was unable to accomplish service as ordered.

Dated this 20th day of November, 2023.

Jamal N. Whitehead
United States District Judge

ORDER - 9