UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DALE HARVEY,

Petitioner,

v.

GARANN ROSE MEANS,

Respondent.

CASE NO. 2:23-cv-1712

ORDER

## 1. INTRODUCTION

This matter is an international child custody dispute in which Petitioner Dale Harvey alleges Respondent Garann Rose Means wrongfully removed their children from Scotland. On November 20, 2023, the Court granted in part Harvey's motion for a temporary restraining order (TRO). Dkt. No. 20. The Court ordered Harvey to serve Means with process and scheduled a hearing for November 30, 2023, at 10:00 a.m., about the issuance of a preliminary injunction and other case management issues. *Id.* at 9.

Despite repeated attempts, Harvey has been unable to formally serve Means with process. But Means appears to have actual notice of the proceedings. Means

failed to appear for the Court's scheduled hearing and has otherwise not participated in this action. Considering these developments, the Court orders the following next steps.

## 2. BACKGROUND

Harvey filed a petition initiating this matter under the Hague Convention on the Civil Aspects of International Child Abduction ("Convention") and the International Child Abduction Remedies Act (ICARA). Dkt. No. 1. Because the Court has already recounted the background facts in its prior order, Dkt. No. 20, it does not repeat them here.

Since the TRO hearing, Harvey has taken additional steps to try to serve Means with process. Harvey asked a process server, Michael Graham, to serve Means. Dkt. No. 28 at 2. Graham conducted a skip trace but found no current addresses for Means in the state of Washington. *Id.* On November 27, 2023, Graham "set up surveillance" and attempted to serve Means at the preschool Harvey believes one of his children is now attending. *Id.* at 3. But he couldn't make contact. *Id.* That same day, Graham tried to serve Means at her aunt's and her father's houses in Seattle and Bow, Washington. *Id.* Means was not at either home, and neither her aunt nor her father provided Graham with Means's current address. *Id.*

On November 22, 2023, Harvey tried to identify the schools the children may be attending by emailing all the schools Means mentioned during the Scottish legal proceedings. Dkt. No. 29 at 2. Harvey visited one of the preschools and found a staff

member who recognized one of the children, but the school refused to confirm or deny attendance. *Id.*

On November 21 or 22, 2023, Means petitioned the King County Superior Court for an ex parte temporary protection order against Harvey. Dkt. No. 29-5 at 9, 18. The court entered the protection order on November 22, 2023, restraining Harvey from contacting Means or their children, "except for service of court documents[.]" Dkt. No. 29-5 at 12. Harvey must appear before the superior court via zoom for a hearing on December 6, 2023. *Id.* at 9. Means's filing suggests that she is aware of the on-going Hague petition proceedings in this Court; among other things, Means wrote, "We fled [Scotland], aware of the risks and the Hague Convention," and that "[i]f the children are forced to return to Scotland by the Hague Convention, this holiday season will be the only one they ever spend in the [U.S.] with their family, and the last one they spend with me until adulthood." Dkt. No. 29-5 at 30. Means gave a PO Box as her address for receiving legal documents on her petition. Dkt. No. 29-5.

On November 27, 2023, Harvey received an email from Sgt. Scott Hatzenbuehler informing him that Means had obtained a protection order against him. Dkt. No. 29 at 3. Harvey has since stopped trying to locate Means or the children for fear of violating the protection order. *Id.*

## 3. DISCUSSION

"The court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). The standard applicable to TROs also governs preliminary injunctions. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc.*, 240

F.3d 832, 839 n.7 (9th Cir. 2001) (explaining that the court's "analysis is substantially identical for the [preliminary] injunction and the TRO[.]"); *see also Fang v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 16-cv-06071, 2016 WL 9275454, at *1 (N.D. Cal. Nov. 10, 2016), *aff'd*, 694 F. App'x 561 (9th Cir. 2017) ("[If] notice of a motion for a temporary restraining order is given to the adverse party, the same legal standard as a motion for a preliminary injunction applies.").

To obtain a preliminary injunction, Harvey must show that he is (1) "likely to succeed on the merits," (2) he will likely "suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in his favor," and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

**3.1 Harvey will likely succeed on the merits and, without injunctive relief, experience irreparable harm.**

The conditions that warranted the TRO still exist. Harvey is likely to establish that he's entitled to relief under the Convention. A child is "wrongfully removed" where removal occurs "in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention" and "at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention." Convention, arts. 1, 3. "A court applying this provision must therefore answer four questions: (1) When did the removal or retention at issue take place? (2) Immediately prior to the removal or retention, in which state was the

child habitually resident? (3) Did the removal or retention breach the rights of custody attributed to the petitioner under the law of the habitual residence? (4) Was the petitioner exercising those rights at the time of the removal or retention?" *Mozes v. Mozes*, 239 F.3d 1067, 1070 (9th Cir. 2001), *abrogated on other grounds by Monasky v. Taglieri*, 140 S. Ct. 719 (2020).

As the Court already found, both children are under 16-years old, the Scottish court awarded split custody and barred Means from leaving Scotland, the children's habitual residence, except for vacations. *See* Dkt. No. 20 at 5-6. Because Harvey appears to have continuously exercised his custody rights before removal and he timely petitioned for relief under the Convention, he is likely to prevail on the merits. *See id.* at 6.

The Court similarly reiterates its prior finding on irreparable harm. As Congress has recognized, the wrongful removal and retention of a child causes continuing harm to the parent and child that justifies preliminary relief. *See* 22 U.S.C. § 9004(a) (Courts "may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition."). On this record, the Court finds that irreparable harm exists and will grow if Means tries to leave the Western District of Washington before the case resolves.

**3.2 The Court finds Means has actual notice of these proceedings.**

Harvey's attorney, Marguerite Smith, emailed copies of the "Petition/Complaint for Return of children[,]" the supporting declarations and exhibits, and Harvey's first TRO motion to Means on November 10, 2023. Dkt. No. 12 at 1-2. Smith also emailed copies of Harvey's second motion for a TRO on November 17, 2023, Dkt. No. 30-4 at 2-3, as well as the Court's Order granting the TRO on November 20, 2023. Dkt. No. 22-1. Smith used Means's email address: garann@gmail.com. The Court finds this email address is likely to provide actual notice to Means given Harvey's testimony that Means uses that address to communicate with him "all the time" and Means has used it to send Harvey emails about their children as recently as October 21, 2023. Dkt. Nos. 14-2 at 2; 2-18 at 2; 4-2 at 2. Within a day or so of receiving this last email, Means sought a protective order in King County Superior Court, stating that she "fled" Scotland despite the Hague convention and acknowledging that her children may be forced to return to Scotland. Dkt. No. 29-5 at 30.

Given the emails sent to her, and the timing and content of the protective order she seeks in state court, the Court finds Means has actual notice of these proceedings. The Court is sensitive to the fact that Means has sought and obtained an ex parte domestic violence protection order against Harvey, which necessarily entails a desire to avoid him and his agents. The Court expresses no comment on her claims of abuse, except to say they are serious allegations. But the effect is that Means has purposefully eluded Harvey and his service attempts in this case, even if for an understandable reason.

Under these circumstances—Harvey's attempts at service, Means's actual notice, and her service avoidance—the Court will convert the TRO into a preliminary injunction on the same terms until further ordered by the Court.

## 4. CONCLUSION

Accordingly, the Court ORDERS:

1. The Court's order granting in part Harvey's motion for a TRO (Dkt. No. 20) is converted to a preliminary injunction, on the same terms, which will remain in force until further order of the Court.
2. The final evidentiary hearing in this matter will be Tuesday, December 19, 2023, at 9:00 a.m. at the Seattle Courthouse of the United States District Court for the Western District of Washington, 700 Stewart Street, Seattle, Washington, in Courtroom 16A. The hearing is scheduled for three hours. **The hearing may be converted to a remote hearing (i.e., Zoom) depending on the availability of the parties.**
    a. Means must appear before the Court at that time and place and show cause why this Court should not order that the children be returned to Scotland and why Means should not be held in contempt.
    b. Means must appear before the Court at that time and place and present all evidence tending to show that the Court should not order the children returned to Scotland, including, but not limited to, evidence relating to the children's habitual residence, Harvey's custodial rights, Harvey's exercise of his custodial rights, Means's

authority to remove the children from Scotland, and other matters that may be relevant.

c. The parties must exchange witness and exhibit lists by December 12, 2023.

d. The parties must email Grant Cogswell, Courtroom Deputy, with their witness and exhibit lists, and copies of their exhibits grant_cogswell@wawd.uscourts.gov. Petitioner's exhibits should be numbered consecutively beginning with 1; Respondent's exhibits should include the prefix "A" and should be numbered consecutively beginning with A-1.

3. The United States Marshals Service is directed to effect personal service upon Means, with reasonable haste, but no later than December 6, 2023. The Marshals must make all reasonable efforts to personally serve Means wherever she may be found, including her presumed address: 8844 18th Avenue SW, Seattle, WA. This directive may be carried out or enforced in the daytime or the nighttime.

4. The Marshals must serve Means with copies of:

a. The summons in a civil action, Dkt. No. 24;

b. The verified petition and supporting declarations and exhibits, Dkt. Nos. 1, 2, 3, 4, 5;

c. Harvey's motion for a temporary restraining order, Dkt. No. 6;

d. The Court's minute order on Petitioner's motion for a temporary restraining order, Dkt. No. 10;

e. The Court's order denying Petitioner's motion for temporary restraining order, Dkt. No. 11;

f. Harvey's second motion for a temporary restraining order, Dkt. No. 14;

g. The Court's minute order on Petitioner's motion for a temporary restraining order, Dkt. No. 15;

h. The Court's order granting in part and denying in part Petitioner's motion for a temporary restraining order, Dkt. No. 20;

i. The Court's minute order amending its order granting in part and denying in part Petitioner's motion for a temporary restraining order, Dkt. No. 23;

j. This Order.

5. The Marshals must seize all passports and travel documents for Means and the children, ZUHM and EKHM, located at Means's presumed address: 8844 18th Avenue SW, Seattle, WA. This directive may be carried out or enforced in the daytime or the nighttime. After completing the seizure, the Marshals will compile a written inventory of all such products and property seized and will provide a copy to the law enforcement authority conducting the seizure, who must include a copy with its return to the Court. The Marshals may, with help from law enforcement authority, take all necessary steps to secure and remove the passports and travel documents located at 8844 18th Avenue SW, Seattle, WA, including, but not limited to, using the appropriate force necessary, if

entry is being denied, by utilizing a locksmith or law enforcement entry tools to gain entry for searching the premises, and to inspect the contents of any rooms, closets, cabinets, safe, vehicles, containers, and desks located on the premises or any storage rooms located within the same complex as the premises.

Dated this 1st day of December, 2023.

Jamal N. Whitehead
United States District Judge