# THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| In Re the Application of : | Civil Action File No: 2:23-cv-1712 |
| Dale Harvey, <br>         Petitioner/Plaintiff, | Petitioner's Brief for Evidentiary Hearing |
| v. | |
| Garann Rose Means <br>         Respondent/Defendant. | |

## I. INTRODUCTION

1. The Petitioner, a citizen of Scotland, has brought this action to secure the return of his two daughters, Z aged 6 and E aged 4 . (At the time of the Petition was filed in this matter Z was 5. At the time of Petitioner's application to the United Kingdom ("U.K") Central Authority E was 3 and Z was 5. The respondent, without petitioner's consent or acquiescence, and in violation of Court orders from the Court in Scotland, United Kingdom ("U.K"), wrongfully removed the children from Scotland, and brought them to the Western District of Washington.

Brief for Evidentiary hearing

Page 1

FLEXX LAW, P.S.
14205 SE 36th Street, Suite 100, PMB 479
Bellevue, WA 98006
(206) 343-6362
maggie@flexxlaw.com

2. This action is brought pursuant to the 1980 Convention on the Civil Aspects of International Child Abduction (the Hague Convention or the Convention) and the International child Abduction Remedies Act ("ICARA"). A copy of the Hague Convention is attached as **Exhibit A to Petitioner's petition filed herein.** The Hague Convention came into effect in the United States of America on July 1, 1988, and has been ratified between, among other contracting states, United States of America and United Kingdom (Scotland being part of the United Kingdom), see **EXHIBIT B,** to said Petition (the last page containing RESERVATIONS NOTIFICATIONS from USA and UK).

3. The objects of the Hague convention are:

Article 1(a): To secure the prompt return of children wrongfully removed to or retained in any Contracting State; and

Article 1(b) To ensure that rights of custody and access under the law of one Contracting State are effectively respected in other Contracting States

4. The Hague Convention authorizes a federal district court to determine the merits of a claim for the wrongful removal or retention of a child. It does not, however, permit the district court to consider the merits of any underlying custody dispute, see Article 16.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this case pursuant to 22 USC section 9003(a) (transferred from 42 U.S.C. section 11603(a)) (jurisdiction under the Hague Convention) and 28 U.S.C section 1331 (federal question jurisdiction).

Venue is proper pursuant to 22 USC section 9003(transferred from 42 U.S.C. section 11603) and 28 U.S.C. section 1391(b) because the Respondent was residing with the children at or near her mother's residence in Seattle.

## III. STATEMENT OF FACTS

6. The Petitioner and the Respondent are both the parents of the children. The Petitioner and Respondent are separated and in the process of a divorce action which commenced on or about 28th April 2023 when Respondent served Petitioner.

Brief for Evidentiary hearing

Page 2

FLEXX LAW, P.S.
14205 SE 36th Street, Suite 100, PMB 479
Bellevue, WA 98006
(206) 343-6362
maggie@flexxlaw.com

7. At all times during the lives of the children, the parents have resided with the children in Glasgow, Scotland, either together or, since separation, in separate dwellings.

8. Since about 11th February 2020 (before the divorce action) the parents have been in litigation in family court in Scotland concerning custody, parenting, location of schools, and access to the children.

9. In 2017 Z was born in Glasgow Scotland. A copy of the birth certificate is attached as Exhibit C to the Declaration of Dale Harvey filed with the Petition (court file document 4).

10. In 2019 E was born in Glasgow Scotland. A copy of the birth certificate is also Exhibit C to the Declaration of Dale Harvey, filed with the Petition.

11. At all times during the lives of the children (until the time of the abduction of the children by Respondent which is the subject of Petitioner's Petition), the parents resided with the children in Glasgow, Scotland.

12. The children attended daycare/nursery (E) and school (Z) in Glasgow Scotland in accordance with an order from the Scottish court at the time of their wrongful taking by the Respondent.

13. At all times during the children's lives the petitioner has continued to exercise his parental rights and maintained his relationship with the children. After the abduction by the Respondent, the Petitioner still tries to exercise said rights and relationship but is prevented by the abduction and Respondent's denial of access to the children from doing so. A copy of emails between Respondent and Petitioner are attached to the Declaration of Dale Harvey filed with the Petition EXHIBIT M and 1.

14. In February, 2020 the Respondent sought a residence order and permission to relocate with the children to Seattle, from the court in Glasgow, Scotland.  Judgement was issued on 12th August 2022, EXHIBIT C to the declaration of Karen Gailey filed with the Petition (court document number 2). Relocation was refused and the Petitioner and Respondent were awarded a joint residence order (50/50 residential time). This was followed by a further order of 13th September, 2022, EXHIBIT I to the said declaration of Karen Gailey. Interdict against Respondent was granted prohibiting Respondent from removing the children from stated a school and nursery in

Brief for Evidentiary hearing

Page 3

FLEXX LAW, P.S.
14205 SE 36th Street, Suite 100, PMB 479
Bellevue, WA 98006
(206) 343-6362
maggie@flexxlaw.com

Glasgow Scotland without the express consent of the father and varying the August 12, 2022 "residence order" to accommodate holidays and vacations . "Otherwise the usual pattern of contact will operate in accordance with the sheriff's judgment of 12 August 2022". Respondent appealed said orders to the Sherrif appeal court in Glasgow Scotland. Her appeal was refused, see appeal order, EXHIBIT K to the declaration of Karen Gailey filed with the petition.

15. The children were wrongfully removed from Scotland by Respondent sometime between September 29th and 4th October 2023. The children were due to return to Petitioner when the school and nursery finished at 3pm on 4th October, 2023. However, on Wednesday the 4th October, 2023 Respondent had kept the children out of school and nursery since October 2nd. Her explanation was that the children were ill.

16. At about 7:30 am on October 4th, 2023 Petitioner received an email from Respondent stating that he would not be able to collect the children that day. When the Petitioner spoke to Respondent by telephone she told him that she had taken the children to Seattle.

17. Respondent has made it clear in her telephone contact with Petitioner, her emails and online (LINKED IN) presence that, despite the various orders of the Scottish Court in relation to the children, she intends to remain with the children in Seattle.

18. At the time of Respondent's departure from Scotland and wrongful removal of the children, numerous court hearings were scheduled to be heard in the litigation between the Respondent and Petitioner to take in the Scottish court.

19. Petitioner has never consented or acquiesced in the removal of the children's residence from Scotland, the children's habitual residence.

20. Petitioner's Request for Return for the Children was promptly submitted to the United States Department of State through the Scottish Central Authority in the United Kingdom (UK). A copy of the Petitioner's Requests for Return, are exhibited as EXHIBIT A and B to the declaration of Dale Harvey, submitted with the petition. Accompanying documents delivered to the Department of State, are listed by Dale Harvey in his said declaration where he references them as exhibits to his declaration and the declaration of Karen Gailey, also filed with the petition.

Brief for Evidentiary hearing

Page 4

FLEXX LAW, P.S.
14205 SE 36th Street, Suite 100, PMB 479
Bellevue, WA 98006
(206) 343-6362
maggie@flexxlaw.com

21. The Scottish Central Authority (Scotland being part of the United Kingdom) contacted the USA Central Authority (Department of State) which offers advice to the left behind parent. The USA Central Authority has offered assistance to find the children. See copy of some of the emails between the Central Authority to Petitioner's attorney EXHIBIT Z to the declaration of Dale Harvey filed with the petition (court document 4). Petitioner asked the Respondent by email where the children are but did not receive an answer See EXHIBIT 1 to the said declaration of Dale Harvey.

22. Petitioner has done all that he can to seek the return of his children to Scotland, their habitual residence.

23. The Respondent has mental health issues. She has experienced suicidal ideation in the past and after the said abduction of the children she sent an email to the petitioner stating that if she had not been able to come to Seattle, she would have committed suicide. EXHIBIT M page 10 to the declaration of Dale Harvey (court document 4). The Petitioner and his Scottish attorney Karen Gailey, have expressed concerns over the welfare of the children especially if Respondent feels desperate.

24. The Respondent has a history of litigious behavior and an unwillingness to accept orders of the court in Scotland. Her removal of the children from Scotland is in direct violation of the Scottish orders. See declaration of Petitioner's Scottish attorney Karen Gailey (court document #2).

25. It appears that respondent's only alleged defense to this action is an ill-defined allegation that returning the children to Scotland would pose a grave risk to the children. She has challenged no other aspect of Petitioner's case. Respondent has a history of inventing abuse claims against the petitioner. These have been found by the Scottish court to be without merit. Her case relies on allegations from her alone. Her alleged abuse events (with the exception of the stalking claim in Seattle when Mr. Harvey was trying to find Means for service, an activity discussed before this court to show his efforts to serve her) all took place *prior to the order of August 12th 2022 in Scotland* (court file #2-4) where the court found:

"……. a pattern of advancing untrue allegations about the defender." (Paragraph 89).

Brief for Evidentiary hearing

Page 5

FLEXX LAW, P.S.
14205 SE 36th Street, Suite 100, PMB 479
Bellevue, WA 98006
(206) 343-6362
maggie@flexxlaw.com

Respondent's long history of unfounded allegations is discussed by Petitioner in his declaration submitted and filed herewith dated 1.16.24 which is incorporated herein by reference. That declaration is submitted as an exhibit on Petitioner's Supplemental Exhibit and Witness (EXHIBIT 60). Respondent is clearly dissatisfied with the decisions in Scotland against her and seeks to relitigate in Washington State. She is forum shopping.

### IV. WRONGFUL REMOVAL AND RETENTION OF CHILDREN BY RESPONDENT: CLAIM FOR RELIEF UNDER THE HAGUE CONVENTION

26. As set forth above, on or about September 29th to October 4th 2023 Respondent wrongfully removed the children within the meaning of Article 3 of the Convention and continues to wrongfully retain the children in the State of Washington, United States in violation of Article 3. The petitioner wants to have his children returned to Scotland which was their habitual residence and the time of the wrongful removal and remains so.

27. Petitioner has never acquiesced or consented to the removal of the children from Scotland to the United States. He has tried everything in his power to obtain their return to Scotland.

28. The Respondent's removal of the children from Scotland is in direct violation of the orders of the court in Scotland referenced above.

29. Respondent's removal and retention of the children is wrongful within the meaning of Article 3 of the Convention because:

(a) It is in violation of petitioner's rights of custody as established by Scottish law. See the declaration of Scottish attorney Karen Gailey filed herein at the same time as the petition. Specifically, Respondent's removal and retention of the children is in violation of Petitioner's right as a physical custodian to determine the children's place of residence. See Hague Convention , Art. 5(a) (defining "rights of custody" under Article 3 to include "in particular, the right to determine the child's place of residence"); the wrongful removal is also in direct violation of the afore stated orders of the Scottish court denying Respondent's request to relocate the children's residence from Scotland to Seattle and in violation of orders relating to the location of the children's school/nursery in Scotland and pick up and drop off times and locations in Scotland. See the

Brief for Evidentiary hearing

Page 6

FLEXX LAW, P.S.
14205 SE 36th Street, Suite 100, PMB 479
Bellevue, WA 98006
(206) 343-6362
maggie@flexxlaw.com

declaration of Scottish attorney Karen Gailey submitted with the Petition and filed herein.

(b) At the time of the children's removal from Scotland, petitioner was actually exercising his rights of custody within the meaning of Articles 3 and 5 of the Convention and, but for Respondent's removal and retention of the children, petitioner would have continued to exercise those rights;

(c) The children were habitually resident with Petitioner is Scotland within the meaning of Article 3 of the Convention immediately before the removal and retention by Respondent.

30. Respondent is continues to wrongfully retain the children in the State of Washington, United States of America.

31. It is believed by Petitioner that the Respondent has very likely been keeping the children either at her mother's residence or nearby to her residence in Seattle but petitioner has never disclosed their location.

32. The children were 5 and 4 years old at the time the petition was filed and 5 and 3 at the time of the Petitioner's Hague application to the U.K Central Authority. The children are now 6 and 4. The Hague Convention applies to children under sixteen years of age of 16 and thus applies to both children.

32. This petition was filed less than one year from Respondent's wrongful removal of the children.

V. **ALLEGATIONS OF RESPONDENT AGAINST PETITIONER AND GRAVE RISK DEFENSE UNDER 1980 CONVENTION**

33. Decisions relating to a child's custody are best served in the child's country of habitual residence. As stated in the Golan v Saada 142 S Ct. 1880 at page 1889:

" Convention's "core premise" is that " 'the interests of children ... in matters relating to their custody' are best served when custody decisions are made in the child's country of 'habitual residence.' " *Monasky* v. *Taglieri* , 589 U. S. —–, ——, 140 S.Ct. 719, 723, 206 L.Ed.2d 9 (2020) (quoting Convention Preamble, Treaty Doc., at 7). Accordingly, the Convention generally requires the "prompt return" of a child to the child's country of habitual residence when the child has been wrongfully removed to or retained in another country. Art. 1(a), Treaty Doc., at 7; see

Brief for Evidentiary hearing

Page 7

FLEXX LAW, P.S.
14205 SE 36th Street, Suite 100, PMB 479
Bellevue, WA 98006
(206) 343-6362
maggie@flexxlaw.com

also Art. 12, *id.,* at 9.1 This requirement "ensure[s] that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Art. 1(b), *id.,* at 7."

34. In the present case the rights of custody and access as adjudicated by the Scottish court should be "effectively respected" pursuant to Article 1 (b) of the 1980 Hague Convention.

Article 1

The objects of the present Convention are –

*a)* to secure the prompt return of children wrongfully removed to or retained in any Contracting State;

and

*b)* to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.

35. Article 13 of the Convention provides a defense that " Notwithstanding the provisions of the preceding Article, the judicial or administrative authority of the requested State is not bound to order the return of the child if the person, institution or other body which opposes its return establishes that –

………………………………………..

*b)* there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.

……………………………….

In considering the circumstances referred to in this Article, the judicial and administrative authorities shall take into account the information relating to the social background of the child provided by the Central Authority or other competent authority of the child's habitual residence.

36. In this case the alleged grave risk has been determined by the court of Scotland not to exist. Article 13 also refers to taking into account the social background of the child. Although arguably a normal part of a custody case, the court in Scotland has gone further and considered a

Brief for Evidentiary hearing

Page 8

FLEXX LAW, P.S.
14205 SE 36th Street, Suite 100, PMB 479
Bellevue, WA 98006
(206) 343-6362
maggie@flexxlaw.com

social worker report concerning the children focused on the mother's abuse allegations, has decided custody and parent's time with the children and determined whether it was in the children's best interests to move to Seattle or stay in Scotland. It decided that the children should remain in Scotland.

Clear and Convincing evidence:

37. The burden of proof in the USA under the Convention is regulated by International Child Abduction Remedies Act (ICARA) 102 Stat. 437, as amended, 22 U.S.C. sections 9001 et seq (42 USC 11601 to 11610 have been transferred to that code citation) is as follows:

The petitioning party need only prove by a preponderance of the evidence that the child was wrongfully removed or retained (Section 9003 (e) (1). ) The burden of proof then must be met by the respondent that return should not be ordered under one of the exceptions. If arguing grave risk this must be done by "clear and convincing evidence" (section 9003 (e) (2)(A). Absent that finding the child must be "promptly returned" to the child's country of habitual residence. (Section 9001( a) (4) ).

38. The respondent failed to convince the court in Scotland that a grave risk to the children existed. Now she turns to this court for re-litigation.

Comity:

39. The Scottish court has made a decision finding that the mother's claims of abuse are without foundation. Now she comes to this court with almost entirely the same allegations on the same facts and all of the allegations she asserts (with the exception of the stalking allegation when petitioner was trying to locate her for service) taking place before the August 12, 2022, judgment of the Scottish court which found her allegations to be baseless.

40. It is submitted that deference should be paid to the foreign judgment precluding re-litigation of the same issue and same facts. In Diorinou v. Mezitis 237 F 3d 133 (2nd Cir 2001) the Court of

Brief for Evidentiary hearing

Page 9

FLEXX LAW, P.S.
14205 SE 36th Street, Suite 100, PMB 479
Bellevue, WA 98006
(206) 343-6362
maggie@flexxlaw.com

Appeals accorded deference to the Greek prior Hague petition findings. The appeal court considered de novo issues full faith and credit and res judicata and collateral estoppel in considering whether to accord comity to foreign decisions. At page 145 the court after a detailed analysis of the facts presented to the Greek court stated that it started with a deference to the Greek court as a matter of comity. However, in this particular case there were some concerns over a finding of fact and its approach to the Article 13(b) defense. None the less (at page 145) "…we see no reason not to defer to the Greek courts' fundamental ruling that Diorinou's retention of the children in Greece …was not wrongful…."

41. In Smedley v. Smedley, 772 F.3d 184 at 188 and 189 (4th Cir. 2014) the court stated: "Our task is to decide whether the district court properly accorded comity to the German court's ruling that Daniela did not unlawfully remove the children to Germany. This court has noted that, though foreign judgments are not entitled to full faith and credit, "comity is at the heart of the Hague Convention." Miller, 240 F.3d at 400 (quoting Diorinou, 237 F.3d at 142 ) (internal quotation marks omitted). Accordingly, "American courts will normally accord considerable deference to foreign adjudications as a matter of comity." Id. (quoting Diorinou, 237 F.3d at 142 ) (internal quotation marks omitted). The Ninth Circuit has provided a useful framework for extending comity in Hague cases: "[W]e may properly decline to extend comity to the [foreign] court's determination if it clearly misinterprets the Hague Convention, contravenes the Convention's fundamental premises or objectives, or fails to meet a minimum standard of reasonableness."6 Asvesta v. Petroutsas, 580 F.3d 1000, 1014 (9th Cir.2009). "

<u>Ameliorative measures part of the grave risk 13(b) consideration;</u>

42. Even if this court were to determine some grave risk attributable to the Petitioner (vigorously opposed by petitioner and not supported by any evidence other than respondent's unfounded claims) the court has discretion to consider ameliorative measures to protect the children in a potential return. See Golan v Saada 142 C.Ct 1880( 2022). In Golan the Supreme Court at page 1892-3 stated : "The question whether there is a grave risk, however, is separate from the question whether there are ameliorative measures that could mitigate that risk. That said, the question whether ameliorative measures would be appropriate or

Brief for Evidentiary hearing

Page 10

FLEXX LAW, P.S.
14205 SE 36th Street, Suite 100, PMB 479
Bellevue, WA 98006
(206) 343-6362
maggie@flexxlaw.com

effective will often overlap considerably with the inquiry into whether a grave risk exists. See *Simcox v. Simcox*, 511 F.3d 594, 607–608 (C.A.6 2007) (explaining that the appropriateness and utility of ameliorative measures correlate with the gravity of the risk to the child). In many instances, a court may find it appropriate to consider both questions at once. For example, a finding of grave risk as to a part of a country where an epidemic rages may naturally lead a court simultaneously to consider whether return to another part of the country is feasible. The fact that a court may consider ameliorative measures concurrent with the grave-risk determination, however, does not mean that the Convention imposes a categorical requirement on a court to consider any or all ameliorative measures before denying return once it finds that a grave risk exists.7

……………………………………………..While consideration of ameliorative measures is within a district court's discretion, "[d]iscretion is not whim." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005)."

43. In Simcox v Simcox 511 F 3d 594 (6th Cir 2007) the US Court of Appeals after finding that the respondent had met the grave risk remanded the case back to the district court "with instructions to determine what conditions, if any, are appropriate and efficacious to ensure the safety of the children upon their return to Mexico, pending the outcome of custody proceedings."

44. In the present case the divorce case is still (after years of litigation between these parties) before the Scottish court. That court has the jurisdiction and ability to decide custody including any allegations of abuse, and custodial issues such as with whom the children should be, which country the children should be in. All of these have been decided by the Scottish court and can continue to be decided by the Scottish court. The Scottish court can deal with any allegations or alleged issues concerning the safety of the children. The mother would only need to move the court in Scotland for an order protecting the children upon reentry into Scotland. Additionally, this federal court could, if it so wished order that someone other than the father return the children to Scotland. There is no reason to delay the return.

Brief for Evidentiary hearing

Page 11

FLEXX LAW, P.S.
14205 SE 36th Street, Suite 100, PMB 479
Bellevue, WA 98006
(206) 343-6362
maggie@flexxlaw.com

## VI. ATTORNEYS FEES AND COSTS

45. To date the petitioner has incurred attorney fees and costs as a result of the wrongful removal and retention of the children by Respondent.

46. Petitioner respectfully requests that this Court award him all costs and fees and transportation costs and lodging costs, pursuant to

Article 26  Convention "…..Upon ordering the return of a child or issuing an order concerning rights of access under this Convention,
the judicial or administrative authorities may, where appropriate, direct the person who removed or
retained the child, or who prevented the exercise of rights of access, to pay necessary expenses incurred
by or on behalf of the applicant, including travel expenses, any costs incurred or payments made for
locating the child, the costs of legal representation of the applicant, and those of returning the child."

47. **And by** 22 USC section 9007 (transferred from 42 U.S.C. Section 11607)

 **(b)COSTS INCURRED IN CIVIL ACTIONS**
(1)
Petitioners may be required to bear the costs of legal counsel or advisors, court costs incurred in connection with their petitions, and travel costs for the return of the child involved and any accompanying persons, except as provided in paragraphs (2) and (3).
(2)
Subject to paragraph (3), legal fees or court costs incurred in connection with an action brought under section 9003 of this title shall be borne by the petitioner unless they are covered by payments from Federal, State, or local legal assistance or other programs.
(3)
Any court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

## VII. RELIEF REQUESTED

**48.** Petitioner requests

Brief for Evidentiary hearing

Page  12

FLEXX LAW, P.S.
14205 SE 36th Street, Suite 100, PMB 479
Bellevue, WA 98006
(206) 343-6362
maggie@flexxlaw.com

- A final judgment in Petitioner's favor establishing that the children shall be returned to Scotland where the Scottish courts have jurisdiction over the children.
- An order requiring respondent pay Petitioner's expenses and costs, including, not limited to transportation costs, and hotel/motel costs, attorney fees and costs under Art 26 of the 1980 Hague Convention and 22 USC section 9007 (transferred from 42 U.S.C section 11607), such expenses and costs to be resolved via a post-judgment motion, consistent with the procedure outlined under Local rule 54 (d).
- such relief as may be deemed just and appropriate under the circumstances of the case.

### VIII PROCEDURAL ISSUES AT THE EVIDENTIARY HEARING

49. Flexible procedure has and should be used to accommodate the needs of speed in the Hague Convention. See Noriander v Fuentes 657 F 3d. 526 at 533 (7th Cir 2011) where the United States Court of Appeals stated :

"The Convention and its implementing Act are chock full of the language of urgency and in no uncertain terms contemplate expedited procedures to guarantee that children are returned quickly to the correct jurisdiction. See, e.g., 42 U.S.C. § 11605 (providing relaxed rules for document authentication); id. § 11601(a)(4) (discussing the need for "prompt" return); Hague Convention art. 1 (stating that a purpose of the Convention is "to secure the prompt return of children wrongfully removed"); id. art. 2 (requiring state parties to "use the most expeditious procedures available"); id. art. 11 ("The judicial or administrative authorities ... shall act expeditiously in proceedings for the return of children."); id. art. 18 ("The provisions of this Chapter do not limit the power of a judicial or administrative authority to order the return of the child *at any time*.") (emphasis added). In that respect, the adjudication of a petition for return of a child <u>is much like a district court's exercise of equitable power in the context of a preliminary injunction or a temporary restraining order.</u> In both circumstances, discovery often must proceed quickly, the district court must apprise itself of the relevant facts, and a decision must be rendered on an expedited basis. <u>The Sixth Circuit in *March v. Levine* affirmed a district court's decision to grant summary judgment to a father seeking return of his children to Mexico under the Convention without any discovery or evidentiary hearing at all.</u> 249 F.3d at 473–75. Like the Sixth Circuit, we conclude that an expedited schedule is appropriate when a court is considering a petition for relief under the Convention."
<u>Underlining has been added to the case quote for emphasis to this Court).</u>

Brief for Evidentiary hearing

Page  13

FLEXX LAW, P.S.
14205 SE 36th Street, Suite 100, PMB 479
Bellevue, WA 98006
(206) 343-6362
maggie@flexxlaw.com

50. Affidavits (declarations):

The Norinder case would tend to suggest that affidavits/declarations would be admissible in a Hague return proceeding because, as that court stated a "petition for return of a child is much like a district court's exercise of equitable power in the context of a preliminary injunction or a temporary restraining order". In those proceedings affidavits /declarations are used.

There have been examples of affidavits referenced as being used, for example:
the District court in Menecham v Frydman-Menecham 240 F. Supp. 2d 437 (D.Md 2003) concluded that there was no need for a "full blown" evidentiary hearing and sua sponte decided the case on the written record without a motion for summary judgment from either party, instructing the parties to submit only supporting affidavits.

In De Souza v Negri, Civil Action No 14-13788 (DJC (D Mass) (Dec. 19,2014) the Massachusetts district court appears to have made use of a mix of affidavits and live testimony. It referenced at page 2 that at "At the hearing, the Court heard testimony from de Souza, Neuza Odete Andre da Silva (de Souza's aunt) and the Respondents, Negri and Sinoura. The Court also admitted numerous exhibits in evidence, including affidavits from one of G.N.S's teachers, Vandreia Pimenta, Exh. 5, a health care worker, Maria Helena Nicoletti, who supervised the health of G.N.S. during monthly
visits, Exh. 6, and Claudecir Tuni, a neighbor of de Souza's, Exh. 7."

In Sorensen v Sorenson 563 F.Supp. 2d 961 (D.Minn.2008) the court considered affidavits as seen in footnote 1 referencing that multiple affidavits were submitted by the defendant.

Affidavits are acceptable under Federal Rules to determine foreign law.

In Whallon v Lynn 230 F3d 450, 458 (1st Cir 2000) the United States Court of Appeals at page 458 stated "Additionally, Whallon submitted into evidence the affidavit of Mexican attorney Omar Quijano Martinez further corroborating that both parents exercise patria potestas rights over a child under Mexican law and stating that both parents must consent to the removal of such child under Mexican law. Such affidavits are an acceptable form of proof in determining issues of foreign law, see Rule 44.1, Fed. R. Civ. P., and are likewise permitted under the Hague Convention."

See also In re I.J.L.-P 256 S.W.3d 363 (Tex. App. 2008) where reference is made to affidavits of two attorneys on Mexican law.

Brief for Evidentiary hearing

Page 14

FLEXX LAW, P.S.
14205 SE 36th Street, Suite 100, PMB 479
Bellevue, WA 98006
(206) 343-6362
maggie@flexxlaw.com

Therefore, Scottish attorneys Karen Gailey's and Grace Mc Gill declarations should be acceptable for the issue of foreign law.

A proposed Finding of Fact Conclusions of Law is attached hereto as **EXHIBIT A.**

Respectfully submitted this 22 day of January, 2024

FLEXX LAW, PS

_____

Marguerite C. Smith WSBA# 16438

Attorney for Petitioner

I declare under penalty of perjury under the laws of the State of Washington that the foregoing facts are true and correct. Signed this 22 day of January 2024 at Glasgow (city) Scotland Country.

_____

Dale Harvey

Brief for Evidentiary hearing

Page 15

FLEXX LAW, P.S.
14205 SE 36th Street, Suite 100, PMB 479
Bellevue, WA 98006
(206) 343-6362
maggie@flexxlaw.com