UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DALE HARVEY, | CASE NO. 2:23-cv-1712 |
| Petitioner, | ORDER |
| v. | |
| GARANN ROSE MEANS, | |
| Respondent. | |

## 1. INTRODUCTION

Petitioner Dale Harvey sought the return of his children, Z.H.M. and E.H.M., under the Hague Convention on the Civil Aspects of Child Abduction and the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001-9011 (ICARA). Harvey prevailed on his petition after a full evidentiary hearing, and the Court ordered the return of the children to Scotland. Dkt. No. 84.

Harvey now moves for his attorneys' fees and costs in bringing this action. Dkt. No. 99. Respondent Garann Rose Means objects to his request, and while rampant "block billing" justifies reducing the award some, Means fails to show that

**ORDER** - 1

an award should be denied altogether as "clearly inappropriate." Accordingly, the Court GRANTS Harvey's motion in part.

## 2. BACKGROUND

The Court previously entered findings of fact and conclusions of law describing the underlying circumstances, so it will not rehash the facts here. Dkt. No. 84. Harvey, through counsel, seeks "attorney fees, other fees and costs" with "yearly interest" at 12-percent pursuant to 22 U.S.C. § 90007(b)(3). In support of his fee petition, Harvey's attorney, Marguerite Smith of Flexx Law, P.S., submits her sworn declaration and the "bills that [her] office has generated to Dale Harvey concerning this case." Dkt. No. 100. According to Smith, the bills total $116,510.19,[1] but she has written off $1,920 of this amount as outside the scope of the return proceedings. *Id.* In his supporting declaration, Harvey acknowledges that he "could ask for other fees and costs, for example, other attorney fees and costs and transportation and boarding fees related to [his] efforts for the return of the children," but he has "elect[ed] . . . not to do so." Dkt. No. 101 at 1. In sum, Harvey seeks to recover $114,590.19 in fees and costs. Dkt. No. 99.

The parties raise extraneous arguments in competing *sur-* and *sur-sur-*replies, addressing the merits of the petition, attacking the other party, and airing many grievances unrelated to the fee petition. Dkt. Nos. 114, 115, 116, 117. These filings violate the Local Civil Rules, and the Court will not consider them. *See* LCR

---

[1] The Court reaches a slightly higher sum of $116,800.50. The Court does not attempt to reconcile the discrepancy, however, because the difference between Harvey's and the Court's totals is insignificant (a .25 percent difference).

**ORDER** - 2

7(g)(2) ("Extraneous argument or a surreply filed for … [an improper purpose] will not be considered.").

### 3. DISCUSSION

**3.1    Legal standard.**

Article 26 of the Hague Convention contains a fee-shifting provision that permits a court to award attorney fees and incidental costs to a successful petitioner. It states:

> Upon ordering the return of a child or issuing an order concerning rights of access under this Convention, the judicial or administrative authorities may, where appropriate, direct the person who removed or retained the child, or who prevented the exercise of rights of access, to pay necessary expenses incurred by or on behalf of the applicant, including travel expenses, any costs incurred or payments made for locating the child, the costs of legal representation of the applicant, and those of returning the child.

Convention, art. 26.

The purpose of the fee-shifting provision is "'to restore the applicant to the financial position he or she would have been in had there been no removal or retention, as well as to deter such conduct from happening in the first place.'" *Lebiedzinski v. Crane*, No. A03-0248 CV(JKS), 2005 WL 906368, at *1 (D. Alaska Apr. 13, 2005) (quoting Convention Text and Legal Analysis, 51 Fed.Reg. 10494, 10511 (March 26, 1986)).

**3.2    Means fails to establish that an award of fees would be "clearly inappropriate."**

There is a presumption in favor of an award for fees and other expenses "unless the respondent establishes that such order would be clearly inappropriate."

ORDER - 3

*Cuellar v. Joyce*, 603 F.3d 1142, 1143 (9th Cir. 2010) (quoting 42 U.S.C. § 11607(b)(3)). Means objects to Harvey's fee application, arguing "[Harvey] has elected to hire a very expensive attorney, and to litigate instead of making direct arrangements." Dkt. No. 105. She also claims that she has "no income . . . [as] the result of ongoing depression attributed to abuse by [Harvey]." Dkt. No. 105 at 2. Means's statement about her lack of income is not made under penalty of perjury. She also alleges that Harvey's petition is an attempt to inflict "financial abuse" upon her. *Id.*

Means has failed to show that a fee award would be *clearly* inappropriate. Like any custody dispute, this was an emotionally challenging situation, but from a merits standpoint, this was not a difficult case. Means conceded most of the prima facie elements establishing that she unlawfully removed the children from Scotland. *See Cuellar*, 603 F.3d at 1143 (finding an award of fees and costs is appropriate when the case is not "difficult" and "'falls squarely within the heartland of the Hague Convention.'"). And she failed to establish by clear and convincing evidence that the children would be in grave danger if returned to Scotland. In this way, Harvey was justified in resorting to the Convention to secure the prompt return of the children. *See* Hague Convention, art. 1.

While Harvey may be in a better financial position than Means given his current employment, he had to spend considerable money to secure the return of the children, and the Hague Convention allows him to seek recovery for these amounts from Means. The Court addresses the reasonableness of Smith's billing rate below,

but the fact that Harvey chose a lawyer with a "very expensive" billing rate—standing alone—does not render a fee award inappropriate.

Means also argues that a fee award against her would be inappropriate because of her financial status. Courts in this district and elsewhere have found that a fee award may be inappropriate when it "prevents the respondent-parent from caring for the child." *Rehder v. Rehder*, No. C14-1242RAJ, 2015 WL 4624030, at *3 (W.D. Wash. Aug. 3, 2015) (quoting *Norinder v. Fuentes*, 657 F.3d 526, 536 (2d Cir. 2011)). But Means makes no showing that a fee award would interfere with her ability to support the children who are now back in Harvey's custody. And while she argues in her unsworn declaration that she has no income, she says nothing about her cash on hand, investments, other assets and liabilities, or prospects for future employment. On this record, the Court does not find that Means's economic and employment standing would render a fee award improper.

Finally, Means claims that a fee award would be a form of financial abuse. Perhaps the concept of "financial abuse," if explained or corroborated in context would make fees inappropriate, but instead Means provides no support for her conclusory allegation and so there is no record before the Court to make any kind of determination about whether such abuse is occurring.

Accordingly, Means has not carried her burden of establishing that a fee award would be *clearly* inappropriate.

**ORDER** - 5

**3.3  Harvey is entitled to recover fees, but not the full amount requested.**

Having determined that Harvey is entitled to recover fees, the Court must now determine the reasonableness of the fees sought. *Sullivan v. Sullivan*, No. CV-09-545-S-BLW, 2010 WL 1651994, at *1 (D. Idaho Apr. 21, 2010) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "A reasonable attorney fee is determined by calculating the 'lodestar,' which is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Id.* (quoting *Hensley*, 461 U.S. at 433) (determining reasonableness of fee petition following successful petition for return of child under ICARA by applying lodestar method).

### 3.3.1  Smith's hourly rate is reasonable.

"The determination of a reasonable hourly rate examines the experience, skill, and reputation of the attorney requesting fees." *Scalia v. Saakvitne*, No. CV 18-00155 SOM-WRP, 2020 WL 4193118, at *11 (D. Haw. July 21, 2020) (citing *Webb v. Ada Cnty.*, 285 F.3d 829, 840 (9th Cir. 2002)). "That rate is based on the prevailing market rate in the relevant community," which in this case is Seattle. *Id.* (citing *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010)).

Smith seeks approval of a $400 hourly rate. Means objects to this amount as exorbitant. Typically, fee applicants support the reasonableness of the hourly rate requested by submitting detailed declarations about their background, skills, experience, and previously approved fee petitions, or from other attorneys regarding the prevailing community rates. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). The evidence submitted by Smith, however, in

**ORDER** - 6

support of her requested rate is thin: she states that she has practiced family law in Washington for more than 25 years, with a "substantial" part of her practice devoted to international family law. Dkt. No. 100 at 2. She also claims to be a published author and co-author on the subject of international family law, although she does not provide a list of her publications. *Id.* She says nothing about previously approved fee petitions and submits no supporting declarations from other lawyers about local rates.

This is not enough to justify the rate sought. *See Chaudhry v. City of Los Angeles,* 751 F.3d 1096, 1110 (9th Cir. 2014) ("Fee applicants have the burden of producing evidence that their requested fees are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.") (internal quotation marks omitted)).

So the Court looks to rate determinations in other cases for support. *United Steelworkers*, 896 F.2d at 407. There are several recent cases in this District involving fee petitions in ICARA cases. Last year in *Bikundwa v. Ruyenzi*, the Honorable Richard A. Jones, approved hourly rates ranging from $275 to $325 for associate-level attorneys working on an ICARA case, No. 2:22-CV-01604, 2023 WL 1778833, at *2-3 (W.D. Wash. Feb. 6, 2023). In *Colchester v. Lazaro*, another ICARA case, the Honorable John C. Coughenour approved an hourly rate of $395 for the principal attorney on the case, who had 11 years of experience, and rates as high as $625 for other attorneys working on the matter, No. C20-1571-JCC, 2021 WL 6274791, at *1 (W.D. Wash. Mar. 18, 2021), vacated and remanded, 16 F.4th 712 (9th Cir. 2021)*; see also id.* at Dkt. No. 92.

**ORDER** - 7

Because Smith's background, skill, and experience are comparable to or greater than these other attorneys with court-approved rates in the community, the Court assigns Smith her requested rate of $400 per hour.

### 3.3.2   Smith's hours must be reduced to account for rampant "block billing" and purely administrative time.

As with the hourly rate, the party seeking fees has the "burden of showing the time spent and that it was reasonably necessary to the successful prosecution of" the case. *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989). Courts may exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Smith includes billing invoices in support of her fee petition, but she does not total the hours worked, leaving the Court to add up the individual time entries to derive the sum—this was tedious work and a waste of judicial resources. According to the invoices, Smith expended 284.9 hours on this matter personally, and her legal assistant contributed another 43.7. hours.

Counsel's near complete reliance on block-billing, however, hamstrings the Court's ability to gauge the reasonableness of her time spent. "'Block billing' is 'the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007) (quoting *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1554 n. 15 (10th Cir.1996)). The practice is disfavored because when tasks are lumped together in large time blocks, it is difficult for courts to determine how much time was spent on

a particular activity. *Id.* at 948. One study found that block billing "may increase time by 10% to 30%." *Id.* at 948 (quoting The State Bar of California Committee on Mandatory Fee Arbitration, Arbitration Advisory 03–01 (2003)).

Consider the following time entry:

| Date | Hrs/Rate | Amount |
|---|---|---|
| 11/27/23 – MCS- Telephone call with messenger and Dale then Dale. Email from Dale. Email and follow up. Telephone conversation with Dale. Follow up email to Dale. Considered issues. Review re dec sent by Karen. Email to Karen. Review re Dale email and attachment and email to Dale. Review re court docs. and email to Dale. Telephone conversation with Dale and Mike. Email from Dale. Email from Karen and to Karen. Email to Dale. Telephone conversation with Dale. Review re email from Dale. Email to Mike. Review order from the court. Email to Means. Email to Dale. | 5.60 $400.00/hr | $2,240.00 |

Dkt. No. 100-1 at 16. It includes more than a dozen discrete tasks, so there is no way for the Court to discern how long any one task took to complete and whether the time expended was excessive. Indeed, how much time was spent here "[c]onsider[ing] issues," as compared to the many emails and phone calls shown to various people? This is just one example.

The Court finds that virtually *all* of Smith's time entries constitute block billing. *See* Dkt. No. 100-1. This is practice is especially problematic when it comes to evaluating the time spent on client communications. The billing records reflect almost daily phone calls and emails between Harvey and Smith. On the one hand, regular contact between attorney and client is laudable, as inadequate

ORDER - 9

communication is often a source of client dissatisfaction. On the other hand, there comes a point when the number of emails and phone calls can "far exceed[ ] what … [is] normal[ ] … in billing records." *D.S. v. Sec'y of Health & Hum. Servs.*, No. 10-77V, 2017 WL 6397826, at *3 (Fed. Cl. Nov. 20, 2017) (finding amount billed for repeated communication and guidance from client was excessive and unreasonable). Because of Smith's block billing practices, the Court cannot tell whether the time spent on attorney-client communications was unreasonable.

When faced with rampant block billing, courts may reduce the fee amount requested by a percentage. *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 765 (9th Cir. 2015) ("It was within the district court's discretion to reduce the requested fee amount to account for the potential inflation of hours that may result from block billing…."); *Welch,* 480 F.3d at 948 ("We do not quarrel with the district court's authority to reduce hours that are billed in block format."). Here, the Court imposes an across-the-board reduction of 25-percent on Smith's requested total hours. This reduction fairly balances the fact that Smith worked hard, even if the time spent was "poorly documented," against the Court's need to veto excessive billing. *Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir.2000) (holding that a district court may reduce hours to offset "poorly documented" billing); *see Hensley,* 461 U.S. at 437 (holding that applicant should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims").

A further reduction is warranted for purely ministerial work. Generally, "clerical or ministerial costs are part of an attorney's overhead and are reflected in the charged hourly rate" and thus are not recoverable. *Jeremiah B. v. Dep't of*

*Educ.*, 2010 WL 346454, at *5 (D. Haw. Jan. 29, 2010); *see Glacier Films (USA), Inc. v. Tenorio,* No. 3:15-CV-01729-SB, 2016 WL 7366951, at *3 (D. Or. Nov. 22, 2016), report and recommendation adopted, No. 3:15-CV-1729-SB, 2016 WL 7365172 (D. Or. Dec. 19, 2016) ("[C]lerical [tasks] … should not be included in fee award"; collecting cases). Smith's billing invoices include 43.7 hours worked by her legal assistant on purely administrative tasks like filing court papers, "assembling documents," uploading documents to Dropbox, printing documents, and redacting documents. Dkt. No. 100-1. The Court declines to award fees for this time.

In sum, the Court finds that Harvey has established the appropriateness of a fee award as follows:

| Timekeeper | Hours Sought | Adjustment | Adjusted Hours | Rate | Lodestar |
|---|---|---|---|---|---|
| Marguerite Smith | 284.9 | Less 25% | 213.68 | $400 | $85,472 |
| Legal Assistant | 43.7 | Less 100% | 0 | n/a | $0 |
| | | | | **Total:** | **$85,472** |

### 3.4    The costs sought are reasonable.

ICARA also allows a successful petitioner to recover their reasonable costs and expenses. 22 U.S.C. § 9007(b)(3). Harvey, through Smith, fails to break out the total costs sought, so the Court is again left to perform these calculations. The monthly billing invoices submitted in support of Harvey's fee application show these costs: (1) $62.80 in copies, (2) $402 filing fee, (3) $190.90 in legal messenger fees,

**ORDER** - 11

and (4) $753.99 in printing costs. In all, the invoices show $1,409.69 in taxable costs. The Court finds the costs and expenses sought to be reasonable.

**3.5  The Court orders post-judgment interest at the federal statutory rate.**

Petitioner is entitled to post-judgment interest on his award of fees and costs, running from the date of this Order. Interest will accrue at 4.46 percent. *See* 28 U.S.C. § 1961.

## 4.  CONCLUSION

As explained above, the Court finds and ORDERS as follows:

4.1  The Court GRANTS in part Petitioner's motion for fees and costs. Dkt. No. 99.

4.2  The Court awards Petitioner $85,472 in reasonable attorney fees and $1,409.69 in costs and expenses.

4.3  Petitioner is awarded post-judgment interest at the rate of 4.46 percent from the date of this Order to the date of satisfaction of the judgment.

4.4  The Court stays enforcement of this fee and cost award until after the Ninth Circuit resolves Respondent's pending appeal.

Dated this 11th day of September, 2024.

Jamal N. Whitehead
United States District Judge

ORDER - 12